# WICHITA FALLS & OKLAHOMA RAILWAY COMPANY ET AL V. A. C. PEPPER.

No. 7243.  Decided January 10, 1940.
Rehearing overruled February 7, 1940.
(135 S. W., 2d Series, 79.)

*Taylor, Muse & Taylor,* of Wichita Falls, *Thompson & Barwise* and *Luther Hudson,* all of Fort Worth, for plaintiffs in error.

Plaintiff having sued for partial destruction of his cotton crop, caused by overflow, and both in his pleading and in his evidence admitted that a portion of said crop was not destroyed,

it was reversible error for the trial court to render a judgment in favor of plaintiff including any amount of damage to said cotton crop in the absence of a finding by the jury as to the number of bales the plaintiff did make on the tract of land involved in the suit, and the inclusion of damages to plaintiff's cotton crop, based on the jury's answer that plaintiff would have raised 28 bales had the crop not been damaged, is reversible error since the judgment is not supported by the verdict. Dallas Hotel Co. v. Davison, 23 S. W. (2d) 708; Continental Oil Co. v. Berry, 52 S. W. 953; Fidelity Casualty Co. v. Arnold, 40 S. W. (2d) 954.

*Bunting & Stine*, of Henrietta, for defendant in error.

It was not error for the trial court to make a finding upon the issue of the amount of cotton plaintiff did make based upon the testimony of plaintiff, which was clear, direct, positive and free from contradictions, inconsistencies and circumstances tending to cast suspicion thereon. Ormsby v. Ratcliff, 117 Texas 242, 1 S. W. (2d) 1084; Federal Surety Co. v. Smith, 41 S. W. (2d) 210; Whittington v. Glaizer, 81 S. W. (2d) 543.

*Ocie Speer*, of Austin, filed briefs as amicus curiae.

MR. JUSTICE SHARP delivered the opinion of the Court.

The principal question presented here relates to the power of the trial court to enter judgment in a cause submitted to a jury on special issues, in the absence of the submission to the jury of certain issues, and a finding made thereon by the jury, under the provisions of Art. 2190, Revised Civil Statutes.

The parties hereto will be designated as they were in the trial court. A. C. Pepper sued the Wichita Falls & Oklahoma Railway Company and the Wichita Valley Railway Company for damages to his growing crops, based upon the negligence of the defendants by causing flood waters to cover the land. The case was submitted to the jury on special issues, and judgment was rendered for plaintiff. The Court of Civil Appeals at Fort Worth affirmed the judgment of the trial court. 101 S. W. (2d) 365. In view of the confusion that has resulted from the construction of Art. 2190, this Court has decided to reexamine the question and reannounce rules relating to the submission of special issues. For this purpose a writ of error was granted.

The gist of defendant's main contention is that, this being a suit for partial damages to crops, and not for total loss, no

proper judgment could be rendered on the verdict of the jury as to the loss sustained to the cotton crop because of the failure of the trial court to submit to the jury an issue as to what amount of cotton was actually raised by plaintiff on the land, and because of such failure the trial court could not take that question from the jury and determine same for the purpose of rendering a judgment on other issues answered.

Pepper was occuping certain land as a tenant, and alleged that his damage resulted from the failure of defendants to maintain adequate culverts and sluiceways beneath its roadway, and that defendants had negligently piled a large number of timbers or piling in the borrow pit, which obstructed the flow of water from the land occupied by plaintiff. He claimed damages for the total destruction of a three-acre garden tract and partial destruction of his cotton crop. The jury found that the defendants failed to maintain adequate culverts and sluiceways.

The case was submitted to the jury on special issues, and the jury found that acts of the defendants complained of by plaintiff constituted negligence, and that such negligence was the proximate cause of the damage to plaintiff's crops and garden.

Special issue No. 10 and the answer of the jury thereto read as follows:

"What do you find, from a preponderance of the evidence would have been the number of bushels of corn that plaintiff would have raised from the corn that was up on June 13th had it not been damaged by the acts of the defendants heretofore inquired about (if you have found that same was damaged by the acts of the defendants)? In answering this issue you will take into consideration the three-thirds of the crop and not merely the tenants portion." Answer: "3760 bushels."

In answer to special issue No. 10a the jury found that the plaintiff produced from the corn that was up on June 13th 1575 bushels. In answer to special issue No. 11 the jury found that the reasonable cost after June 13th of cultivating, gathering, and marketing said corn was $205.50. In answer to special issue No. 12 the jury found that the value per bushel of the corn mentioned in special issues Nos. 10a and 11 would have been 50¢ per bushel.

Special issue No. 13 and the answer of the jury thereto read as follows:

"What do you find from a preponderance of the evidence would have been the number of bales of cotton of an average weight of 500 pounds that plaintiff would have raised had it not been damaged by the acts of the defendants heretofore inquired about (if you have found that the same was damaged by the acts of the defendants) ? In answering this issue you will take into consideration the four-fourths of the crop and not merely the tenant's portion." Answer: "28 bales."

In answer to special issue No. 14 the jury found that the reasonable cost after June 13th of cultivating, picking, ginning, and marketing the cotton, had it not been so damaged, was the sum of $586.10. In answer to special issue No. 15 the jury found that the value per pound of said cotton at the time of maturity and marketing same was 11¢ per pound. In answer to special issue No. 16 the jury found that the reasonable value of the plaintiff's garden to him was $300.00. In answer to special issue No. 17 the jury found that the garden which was growing on June 13th was totally destroyed. In answer to special issue No. 18 the jury found that plaintiff raised 200 bushels of corn after June 13th; and in answer to special issue No. 19 that the value of such corn was 50¢ per bushel. In answer to special issue No. 20 the jury found that the reasonable cost of planting, cultivating, and marketing said corn was $23.00. In answer to special issue No. 21 the jury found that plaintiff raised 475 bushels of millet after June 13th, and further found that the value of said millet was $1.00 per bushel. They further found that the reasonable cost of planting and marketing said millet was $207.00.

The jury also found, in answer to special issue No. 24, that plaintiff would make 2,000 pounds of maize; and in answer to other issues found the value thereof. Such issues are not material here.

At the conclusion of the testimony the defendants requested the trial court to instruct the jury to return a verdict for defendants,—which the trial court refused. After the conclusion of the testimony, and before the court had read his charge to the jury, the defendants urged only the following objections to such issues:

"Now come defendants, * * * and specially object and except to that part of Special Issue No. 10, as follows: 'If you have found that same was damaged by the acts of the defendants'; and in this connection object and except to the action of the Court in not including the word 'negligent' just proceding the

word 'acts' in said clause for the reason that the defendants would not be liable in anywise to the plaintiff for any acts except negligent acts and the issue as given is prejudicial to the rights of the defendants.

"The defendants also object and except to the Special Issue No. 13 in the same way and manner as set out in the proceding objection and exception."

The Court of Civil Appeals in its opinion makes the following statement:

"The testimony of plaintiff, which in this respect is un-contradicted, shows plaintiff gathered three bales of cotton from the premises. The defendants in their brief make an extensive and complete calculation in the form of an account as to the probable elements the court must have considered in arriving at the judgment entered. The plaintiff agrees that the statement so made is substantially correct. We have verified these figures by the record and find they are well supported by the testimony. It was found by the jury that plaintiff should have made 28 bales of cotton; that it would require an expense of $586.10 to cultivate, harvest and market the cotton after the date of the overflow, had it not been damaged; that the cotton would have been worth $55.00 per bale. The court, in making up his judgment, deducted from the 28 bales the three bales shown to have been made and gathered, leaving a loss to plaintiff of his three-fourths interest in the remaining 25 bales and from the value of these he deducted the expense found by the jury to be necessary in cultivating, harvesting and marketing, the result found by the court being a net loss on the cotton to plaintiff of $445.65."

The Court of Civil Appeals also makes the following statement:

"The jury found in response to a special issue that the garden was totally destroyed, and to another issue, that its reasonable value to the plaintiff was $300.00. The testimony is not entirely clear as disclosed by the statement of facts, that the value of the garden would have been worth to plaintiff, the amount claimed, over and above the expense of finishing its cultivation and the canning of that part which would not be consumed during the growing season. He testified that his own family, and those of his two sons and his hired hand, would consume a part of it before the canning season, but that by their own labor they would have canned the remainder

for home consumption; that $10.00 in labor would have cultivated it and $25.00 or $30.00 would have purchased necessary cans; yet he finally testified that his estimate of its value of $300.00 was arrived at by taking all of these things into consideration and that it would be worth $300.00 to him after it was canned. The jury had all of this testimony before them and found its value to be $300.00, and we find no reason to disturb their verdict.

"The testimony further disclosed that after the destruction and damages to his corn and cotton, he planted late forage crops and realized approximately $188.33 therefrom. The court's judgment was in favor of plaintiff for $1079.65. An analysis of the jury's verdict shows his net loss to the corn was $528.33; his loss to the cotton was $445.65, and to the garden $300.00; these added together make a total of $1273.98 and deducting the value of the late crop of $188.33 leaves the total net loss of $1085.65."

In response to certain issues the jury found that plaintiff would have made 28 bales of cotton, which was of the value of eleven cents per pound, or $55.00 per bale, and that plaintiff's expense in producing the crop would have been $586.10. No issue was submitted to the jury as to the number of bales of cotton plaintiff actually did make on his land, nor was such issue requested. In submitting issues with reference to plaintiff's garden, which was claimed to have been totally destroyed, only one issue was submitted, which inquired as to the value of the garden to plaintiff. No issue was submitted as to the expenses necessarily incident to maturing, gathering, and canning the produce from the garden, nor was such issue requested. Plaintiff testified that he estimated that he would make three bales off the nine acres, not destroyed, and that he had picked two bales off the nine acres, and had another to pick. The court deducted from the 28 bales the three bales testified to by plaintiff, and entered judgment for plaintiff for the sum of $445.65, the net amount of the three-fourths interest in the cotton, less the expense found by the jury to be necessary for cultivating, harvesting, and marketing same.

We shall now consider the most important question raised in this case. The railroad companies challenged the right of the trial court, in the absence of a finding by the jury, to find that three bales of cotton were made, and in the absence of an issue as to the amount of expenses necessary to the production and canning of the products as raised by the evidence, and enter judgment for plaintiff for these items as was done. This

question involves the construction of Art. 2190, Revised Civil Statutes, which relates to the submission of special issues. The Court of Civil Appeals held that the failure of the trial court to submit to the jury an issue as to the amount of cotton raised by plaintiff for the year 1935 was not error. The court said:

"The ultimate issue of loss to plaintiff by the negligent acts of defendants was submitted to the jury and found in favor of plaintiff, the fact issues to follow, which were incident and supplemental to that ultimate issue, are those complained of by defendants. The holding in the case of North v. Atlas Brick Co. (Com. App.) 13 S. W. (2d) 59, clearly illustrates the point, and we adopt the language there used, which said:

" 'An issue submitted in part or even defectively submitted, with the acquiescence of the parties is not waived. It is like the ordinary issue of negligence in a personal injury case. The complete ultimate issue is usually made up of four elements or subsidiary issues, being those of (1) the fact alleged, (2) whether the same be negligence, (3) whether such negligence be the proximate cause of injury, and (4) the amount of damage. Now, if one or more of such elements, or issues as they are usually denominated, be submitted and the others not submitted nor requested to be submitted, such issue is not waived, but the court may find, and under the statute is deemed to have found, the unsubmitted issues in such way as to support the judgment rendered by him.' "

It is difficult to precisely define a rule that will be elastic enough to meet the ends of justice in all cases. Rules and statutes relating to practice and procedure have always been a prolific source of controversy. It seems impossible to adopt a rule or statute that will meet all the necessities that may arise in the trial of lawsuits. An examination of the decisions construing the rules and statutes relating to practice and procedure in this State shows a marked conflict of decisions on that subject. In the case of Stillman v. Hirsch, 128 Texas 359, 99 S. W. (2d) 270, this Court reviewed some of the rules, statutes, and decisions touching this subject, and pointed out a few of the conflicts.

The rule before us has undergone several changes. The First Legislature, on May 13, 1846, passed an elaborate Act, consisting of many sections, regulating pleadings, issues, verdicts, etc. 2 Gammel's Laws, pp. 1669, 1698; Laws of 1846, p. 392; Art. 1469, Paschal; Art. 762, Hartley. This Act was carried into the Revised Civil Statutes of 1879 as Art. 1331 which was carried into the Code of 1895 as Art. 1331 without

change. In 1897 Art. 1331 was amended. Article 1331 as amended went into the 1911 Code as Art. 1985. It also went into the 1925 Code unchanged as Art. 2190. In 1931 the 42d Legislature, Ch. 78, S. B. 95, amended Art. 2190.

■ The opinion rendered by this Court in the case of Silliman et al v. Gano et al, 90 Texas 637, 39 S. W. 559, 40 S. W. 391, decided April 29, 1897, was perhaps the moving cause for the amendment of the law. In response to the suggestions made by this Court in that opinion, the Legislature in 1897 amended Art. 1331. Thus it will be noted that the Legislature modified the rigid rule originally expressed in Art. 1331 before its amendment. From time to time the Legislature has amended the law, as pointed out above, and it is now Art. 2190. Under the law as it now exists, the duty is placed on the court, when a case is submitted to the jury, "to submit all the issues made by the pleading and evidence." The article further provides that "failure to submit an issue shall not be deemed a ground for reversal of the judgment unless its submission has been requested in writing by the party complaining of the judgment." The article further provides: "Upon appeal or Writ of Error, an issue not submitted and not requested is deemed as found by the court in such manner as to support the judgment if there is evidence to sustain such finding."

■ The Legislature did not see fit to place in the article the definition of an "issue" as described therein. In Freeman v. McAninch, 87 Texas 135, 27 S. W. 98, it is stated in general terms that "an issue is the question in dispute between the parties to an action, and in the courts of this State that is required to be presented by proper pleadings." For further definitions see Words and Phrases, First Series, Vol. 4, p. 3792; Words and Phrases, Third Series, Vol. 4, pp. 566, 567, and 568.

■ Much has been written on this subject. The decisions are in hopeless conflict. See Speer's Law of Special Issues, p. 409 et seq. and p. 579 et seq. See, also, Texas Law Review, Vol. XIV, Number 4, p. 538, and Texas Law Review, Vol. XVI, Number 1, p. 95. Some contend that this Court in the case of Moore v. Pierson, 100 Texas 113, 94 S. W. 1132, construed the statute differently from what it was construed in the case of Ormsby et al v. Ratcliffs, 117 Texas 242, 1 S. W. (2d) 1084. Those two decisions seem to furnish the principal basis for the contentions. Moore v. Pierson involved the construction of Art. 1331 as amended. That suit involved a claim for damages based upon two separate trespasses, each constituting a separate ground for recovery. The trial court submitted the case

to the jury on special issues, and only one of the trespasses claimed by plaintiff was submitted to the jury. The other trespass was entirely omitted. To this method of separating the case plaintiff made no objection, other than his previous request for the case to be submitted on a general charge. In answer to the issues submitted the jury found against the plaintiff, and judgment was rendered against him. He then sought by appeal to set aside the judgment on the ground that the trial court had not submitted issues covering both grounds of trespass. Because of the importance of that decisions, we quote liberally from the opinion. After stating the facts involved, Mr. Justice Williams, speaking for this Court, said:

"It is next objected to the charge that it excluded from the consideration of the jury the cause of action asserted for the second trespass, and that it did so cannot be denied. But the plaintiff has not put himself in a position to raise that objection on appeal. The act of 1897 (Laws 1897, (Sp. Sess.) p. 15, c. 7), amendatory of article 1331, Rev. St. 1895, established a very important rule of practice to be observed by the appellate courts in reviewing causes submitted in the trial court upon special issues. The statute gives to the parties the right to have all their issues submitted to the jury, but the amendment provides: 'But the failure to submit any issue shall not be deemed a ground for reversal of the judgment upon appeal or writ of error, unless such submission has been requested in writing by the party complaining of the judgment. Upon appeal or writ of error an issue not submitted and not requested by a party to the cause shall be deemed as found by the court in such manner as to support the judgment, provided; there be evidence to sustain such findings.' The effect of this statute is to require that an appellant or plaintiff in error, in order to entitle himself to complain in the appellate court of the fact that the trial court has not submitted to the jury any of the issues, must have requested the submission in writing. The first provision in the amendment speaks of the 'failure to submit,' and if it stood alone it might be susceptible of the interpretation that it applies only to omissions to submit, and not to positive withdrawals of or a refusal to submit issues, and might admit of the application of the old rule of practice which required special requests to supply omissions, but not to correct positive and affirmative errors. But the last provision requires the appellate court to treat an issue not submitted or requested as so found by the trial court as to sustain the judgment, if there be evidence to support such a finding. *The consequence must necessarily be that when the trial court has ex-*

*pressly submitted some issues and excluded others, and neither party has put in writing a request for the submission of those excluded, they must be regarded in the appellate court as having acquiesced in such action and consented for the trial judge to determine from the evidence the issue not submitted. It is only by a written request that the party puts on record his dissent from the action of the court and his insistence upon the right to have the jury, rather than the judge, decide the point at issue."* (Italics ours.)

■ Then came to this Court Ormsby v. Ratcliffe, supra. The opinion in that case was written for the purpose of clearing up the confusion that existed among the bench and bar relating to a certain rule of practice involved in Art. 2190. The court reviewed the legislative intent expressed in Arts. 2185, 2186, and 2190 of the Revised Civil Statutes. In that case it was contended, as here, that the trial court, under the terms of Art. 2190, could make certain findings upon certain issue not submitted to the jury, and enter judgment thereon. This Court, in reply thereto, said:

"It has been held in a number of well-considered cases, and we think correctly so, that the above-quoted provision of the statute does not apply to issues in the case which are independent causes of action in themselves or controlling and independent grounds of recovery, or independent grounds of defense, but that it applies only to such omitted issues as are in accord with, and supplemental or incidental to, and which support, the issues of fact which were submitted and found by the jury, and upon which the judgment is based. It will be observed that the statute provides that such an issue not submitted and not requested is deemed 'as found by the court in such manner as to *support the judgment,*' but it does not provide that such omitted issue or finding shall in itself form the basis for the judgment as an independent ground of recovery, but only in *support* of the judgment properly found and based on a recoverable ground. The language used clearly implies that such unsubmitted and unrequested issues could not form an independent and original basis for the judgment, but only shall be found in such manner as to support the judgment. That this is the proper construction and meaning of Article 2190 is made clear also by the provisions of Articles 2185, 2186, and the first part of Article 2190 quoted above."

And again it was said:

"When the omitted issue constitutes a complete ground of

recovery, or a complete defense, a failure to request a submission of that issue waives said ground of recovery or said ground of defense."

■ It is well known that lawsuits frequently involve several grounds of recovery and defense. In order to cover such grounds, many issues must be submitted. Under the old law all such issues had to be submitted, and findings made thereon by the jury, before the court could enter a binding judgment. That this placed a heavy burden on the trial court, and caused the reversal of many judgments, is unquestioned. Article 2190 changed the old rule. It clearly appears that it was the intention of this article to relax the old rule, simplify the procedure thereunder, and give more authority to the trial court to make findings, under certain circumstances, in order to support the judgment entered.

■ The terms "ultimate issues," "ultimate facts," "essential facts," "essential issues," and "controlling issues" are frequently used synonymously. An ultimate fact is one essential to the right of action or matter of defense. If an ultimate fact is involved in a case, which is essential to the claim or defense, and is necessary to form the basis of a judgment, it is the duty of the court to submit such issue for determination by the jury. On the other hand, it is not necessary to submit a special issue where it does not call for the determination of some ultimate fact necessary to form the basis of a judgment, as where it relates to subordinate facts to be considered in determining ultimate facts, and necessarily embraced in the determination of the ultimate fact issue. In other words, only controlling issues should be submitted.

■■ The fundamental principle underlying the construction of Art. 2190 is that in a case tried before a jury each litigant has the legal right to have the jury pass upon the ultimate or essential issues of fact raised by the pleadings and the evidence, and findings made by the jury thereon, sufficient to form the basis of a judgment. The power of the judge to make findings where none are submitted or requested does not extend to ultimate or essential issues which are necessary to base a judgment thereon, or to independent grounds of recovery or defense. A party may waive an issue upon which he relies for recovery or defense, by failing to request its submission. We find no language in Art. 2190 which places the duty on the plaintiff to present defensive issues which would support a judgment for the defendant; and no duty rests on the defendant to present

such issues as are essential to a recovery by the plaintiff. In such case, if the party has failed to request for submission such issue, or issues, as will sustain his action or defense, he has not met the burden placed upon him by law, and no waiver can be imputed to the other party for such failure. For instance, in the case of Kirby Lumber Co. v. Conn, 114 Texas 104, 263 S. W. 902, it was held that the issue of limitation not having been submitted or requested, the trial court did not have the power, under the statute, to make such findings in order to sustain the judgment of the trial court. It was also held, in the case of Colbert v. Dallas Joint Stock Land Bank, 129 Texas 235, 102 S. W. (2d) 1031, that the issue of the bank's acceptance of Colbert's service was an independent ground of recovery. It was held that such issue was the "very gist and basis of the right to recover on quantum meruit," and that it was error not to submit such issue, and that the trial court did not have the power to make such finding and render judgment thereon.

■ We have carefully read and considered the many opinions that have been written construing this article. It would serve no useful purpose to review them here. When we consider Art. 2190 in the light of its background, and the purpose for which it was enacted, we think the following general rules should govern the procedure thereunder:

1. The court shall submit all issues raised by the pleadings and the evidence.

2. Where the court fails to submit a separate or independent ground of recovery or defense, and there is no request to submit the issue or issues omitted, such issue or issues are waived, and no waiver can be imputed to the other party for such failure.

3. Where only one ground of recovery or defense, properly raised by the pleadings and the evidence, is submitted to the jury, the court shall submit the issues covering the essential and controlling facts of such ground, and findings shall be made thereon by the jury before the court can enter judgment sustaining such ground. A defective submission of the essential elements of an issue not wholly void, and not objected to, will be regarded as a sufficient submission of such issue. A fair and commendable practice would be for the trial court to submit substantially the essential component elements of an issue. As an illustration, we will take a negligence case. As a general rule, in such a case the four component elements of the ultimate issue must be shown: (1) that the defendant

did an act, (2) that the act was an act of negligence, (3) that the act of negligence was the proximate cause of the plaintiff's damage, and (4) that the plaintiff was damaged. But if the trial court should fail to submit one or more of such component elements of an ultimate issue, such component element, or elements, not submitted and not requested to be submitted are not waived, and the court may find the unsubmitted element, or elements, in such way as to support the judgment rendered by him, if there is evidence to support such finding.

4. Where the court submits issues covering two or more grounds of recovery or defense, and the jury finds essential facts on one ground sufficient to base a judgment thereon, the court has the power to enter judgment in the cause, although it may appear that another or other grounds of recovery or defense have been submitted in part, or incompletely submitted, with the acquiescence of the parties, covering separate and independent grounds of recovery or defense; and the jury having made answer thereto, the court may find on such issue, or issues, not submitted, and not requested, in such manner as to support the judgment, if there is evidence to sustain such finding.

In the absence of objections for the failure of the trial court to submit the issues above discussed, and no such issues having been requested, the trial court was authorized, under the state of this record, to render judgment as was done.

■ It is contended that the judgment is excessive. The judgment of the Court of Civil Appeals upon this question is final, and this Court is without jurisdiction to review same. Panama Refining Co. v. Crouch, 132 Texas 608, 124 S. W. (2d) 988.

We have carefully considered the other questions raised, and same are hereby overruled.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered January 10, 1940.

Rehearing overruled February 7, 1940.