## HALL et al. v. RAWLS.
### No. 3813.

Court of Civil Appeals of Texas. Beaumont.
March 6, 1942.

Rehearing Denied March 25, 1942.

Second Motion for Rehearing Overruled
April 15, 1942.

E. B. Pickett, Jr., Bradford Pickett, and Nolan D. Pickett, all of Liberty, for appellants.

H. D. Grogan, of Liberty, and Williams, Lee Sears & Kennerly and Fred Moore, all of Houston, for appellee.

COMBS, Justice.

By this suit Mrs. R. T. Rawls, a widow, as plaintiff sought to recover from appellants, H. D. Hall, George F. Wisdom, and Mrs. Lula Wisdom, title and possession of lot 9, block 5, Edwards subdivision of the town of Cleveland, Texas, and in the alternative to recover on a promissory note of $1,150, executed by appellant George F. Wisdom, payable to Mrs. Rawls, together with foreclosure of an equitable vendor's lien on the lot. The trial court entered judgment in her favor for title and possession of the lot upon jury findings which will be referred to later.

Her suit is founded on a contract alleged to have been entered into between her and appellant George F. Wisdom in 1935, whereby she conveyed the lot in question to Wisdom, in trust, he agreeing to erect a building thereon and to retain possession and collect rentals from the property until December 29, 1938. In that connection Wisdom executed a promissory note for $1,150, payable to Mrs. Rawls, dated August 19, 1935, and payable three years, four months and ten days after date. That note has never been paid unless it was extinguished by a subsequent contract referred to below, Mrs. Rawls' contention being that it was never intended that it should be paid but instead that the property was to be reconveyed to her at the expiration of the three years, four months and ten days specified in the note. Her contention in that connection is that Wisdom was to rent the property, collect the rents and reimburse himself for his expenditures out of rentals of the property so collected during that period of time. Wisdom arranged to finance the construction of the improvements at a cost to him of something over $500. It was shown that immediately upon the completion of the improvements he rented the place for $15 per month, which was later increased to $17.50 per month, and finally to $25 per month after he had placed certain additional improvements on the back of the lot, and that at the time of the trial he had already collected from rentals more than the amount of his expenditures for the improvements. Wisdom contended that the original contract was superseded by a later one in 1938, to which we will later refer. But further, he controverted Mrs. Rawls' version of the original contract, his contention being that he was to reconvey the property to Mrs. Rawls only when she had paid off the indebtedness against it, plus $65 to him for his services; that when he completed the original improvement he called upon Mrs. Rawls to make good her agreement to take over the indebtedness and to pay the same off, including the $65 due him, in installments, but that she declined to do so, stating that she was not able, and that he then began renting the property. In that connection he flatly denied that he was to be repaid out of rentals of the property. By appropriate issues, the trial court sent to the jury the respective contentions of the parties, and the jury found the contract as contended by Mrs. Rawls and against the contention of appellant Wisdom.

Appellant Wisdom further contended that shortly after the original contract, he and Mrs. Rawls had a disagreement about the terms of it and that on September 21, 1938, they compromised and settled their dispute by a contract in writing. The instrument introduced by appellants reads as follows:

"To Whom It May Concern:

"This agreement made and entered into this 21st day of September, A. D. 1938, between Mrs. R. T. Rawls and F. Wisdom, that

"Whereas Mrs. R. T. Rawls holds a $750.00 note against the said F. Wisdom and the said Mrs. R. T. Rawls has agreed to accept one certain lot, this day deeded to her, the said Mrs. R. T. Rawls, by the said F. Wisdom, and one 10x24 foot house, which is to be moved on the said lots at the expense of the said Wisdom, with two 12x12 foot rooms to be built on same and one 6x12 foot porch, all to be at the expense of the said F. Wisdom, in payment for said moneys due on said note.

"Mrs. R. T. Rawls hereby agrees to deliver to said F. Wisdom the said note upon the completion of the above house, according to the above measurements. And further agrees to give F. Wisdom possession of the building known as the Pago Package Store, upon receipt of the said deed.

"F. Wisdom.
"Mrs. R. T. Rawls."

Simultaneously with the execution of said agreement, appellant George F. Wisdom executed and delivered to Mrs. Rawls a deed conveying to her lot 8 of the Whitmire subdivision of the town of Cleveland, being the lot referred to in the agreement above set out. Mrs. Rawls was in possession of the property in controversy, the building thereon being that referred to in the agreement as the Pago Package Store. The same afternoon that the agreement was signed she moved out of it and Wisdom began preparation to remove the 10x24 house on to the lot in the Whitmire addition, covered by his deed to Mrs. Rawls. However, he testified he was prevented from making said improvements by Mrs. Rawls.

Mrs. Rawls admitted that she signed the agreement and that Wisdom gave the deed

to her but stated that her assent to the agreement was conditional; that she stated at the time she would have to submit the deed to her lawyer, Mr. E. W. Love, for approval, to which Mr. Wisdom assented. That she carried the deed to Mr. Love either the next day, or a day or two later, and Mr. Love turned it down, stating that it had not been signed by Mrs. Wisdom, and further, that there was no plat of the Whitmire addition on record. In short, he told her "that the deed was no good." Mrs. Rawls testified that she went back and told Mr. Wisdom what her lawyer had said, and he agreed to go to Judge Love's office with his wife and straighten everything out; that she went there and waited for him at the agreed time but that he never did show up. That she then carried the deed back to Mr. Wisdom and offered it to him, but that he refused to accept it and that she immediately moved back on the property where she remained until she was later dispossessed by some form of court writ. In that connection, the attorney, Mr. E. W. Love, corroborated Mrs. Rawls, stating that he turned the deed down, and giving his reasons therefor. He also corroborated her testimony that she came to his office and waited for Mr. and Mrs. Wisdom to show up and that they never came. There was also oral testimony by Charles Holt from whom Wisdom bought the lot in the Whitmire addition, which he conveyed to Mrs. Rawls, to the effect that in deeding said lot 8, involved here, the deed was made out to Mrs. Wisdom, and that Mrs. Wisdom a short time later came to him and asked him to tear the deed up and deed the lot to her son. The deed itself was not placed in evidence and it appears not to have been recorded.

The question of whether or not Mrs. Rawls assented to the agreement of September 21, 1938, or whether her assent was conditioned upon the approval of the deed by her attorney, as contended by her, was not sent to the jury and its submission was not requested by either party. The only issue submitted by the trial court to the jury with reference to the agreement was issue 4, which was as follows:

"Do you find from a preponderance of the evidence that in executing the agreement dated September 21, 1938 (Defendant's Exhibit B) it was mutually intended and agreed by and between Mrs. Rawls and Wisdom that said writing should constitute an extinguishment and substitution of their agreement of August 19, 1935, whatever the terms of said agreement might have been?

"Instead of answering 'Yes' or 'No,' let the form of your answer be 'It was so intended' or 'It was not so intended'."

The jury answered "It was not so intended."

The evidence showed that appellant George F. Wisdom had sold and conveyed the property in question to appellant H. D. Hall on the 27th day of April, 1938, for a consideration of $1,400. The trial court sent appellant Hall's plea of innocent purchaser to the jury by appropriate issues and in response to issue No. 2 the jury found that Hall knew at the time he accepted the deed from Wisdom that Wisdom had promised and agreed to reconvey the property to Mrs. Rawls. Hence, he was not an innocent purchaser.

Opinion.

Appellants do not challenge here the sufficiency of the evidence to support the jury's findings relative to the original contract between appellant Wisdom and appellee, Mrs. Rawls, entered into in 1935. Their contention here is that they were entitled to an instructed verdict because of the compromise agreement which they contend was entered into on September 21, 1938, between appellant Wisdom and Mrs. Rawls, which agreement is set out in full in the statement above. Appellants' contention on this point is well stated by counsel in their brief, as follows: "When the written contract of date September 21st, 1938, is considered and construed, as it must be, in the light of the situation of the parties at the time, it is clear that Mrs. Rawls thereby intended to absolutely release and relinquish unto Wisdom whatever right, title or claim she had in and to Lot 9 which she had conveyed to Wisdom by the deed of date August 19th, 1935, such intention of Mrs. Rawls, as just above stated, being a part of the whole purpose and intention of both Mrs. Rawls and Wisdom, in executing the contract of date September 21, 1938, to thereby fully and finally adjust and compromise said contention and controversy then existing between them in regard to their rights in and to said land and improvements thereon under their original agreement and contract made on or about

August 19, 1935. And as the said compromise contract of September 21st. 1938, is not ambiguous, but the intent and meaning of the parties thereto is simply and clearly stated, the construction, application and effect of said contract was a matter of law for the trial court to control and determine."

Appellants properly preserved the point both by timely objection to the submission of the issue and in their motion for instructed verdict.

We agree with appellants' contention that said issue 4 should not have been submitted to the jury. All parties agree that Mrs. Rawls signed the agreement which was introduced in evidence and that appellant George F. Wisdom at the same time executed a deed purporting to convey to her lot 8 of the Whitmire addition. The testimony showed without dispute also that said lot 8 of the Whitmire addition was the lot referred to in the agreement; that the Pago Package Store mentioned in the agreement was a reference to the building on the lot in controversy, and that the $750 note referred to was the $1,150 note, given by Wisdom August 19, 1935, as part of the original transaction. Thus the writing was made plain and unambiguous. Consequently, what the parties mutually intended is to be determined from the language of the instrument in connection with the surrounding circumstances at the time it was made. McGranahan Lbr. Co. v. Pyramid Asbestos & R. Co., Tex.Civ.App., 18 S.W.2d 224; Schoellkopf v. Bryan, Tex.Civ.App., 284 S. W. 339. The real question at issue with reference to the alleged settlement agreement of September 21, 1938, was whether or not it was in fact consummated. Mrs. Rawls' theory was that her signature was attached to the writing conditionally; that the deed given her by Wisdom as part of the transaction was to be submitted to her attorney, Mr. Love, for approval. It is not disputed that when she carried the deed to Mr. Love he declined to approve it and according to her testimony she tendered the deed back to Wisdom and has never asserted any rights under it. She immediately went back into possession of the property involved here, which she testified is the only home she has. The attorney, Mr. Love, corroborated Mrs. Rawls' testimony to the extent of his part in the matter. He was not present when Mrs. Rawls and Mr. Wisdom signed the agreement. The agreement was prepared by Mrs. Jeff Cochran, who testified as a witness for appellants that Mrs. Rawls and Mr. Wisdom came to her office and that she acted for both of them in the preparation of the agreement. And although Mrs. Rawls' testimony that she entered into the agreement conditionally was disputed by Mr. Wisdom, Mrs. Cochran, who prepared it and who was the only other person present when the parties signed it, was not asked whether or not Mrs. Rawls said she would have to submit the deed to her lawyer. Incidentally, the oral testimony indicated the probability that title to the lot which Mr. Wisdom deeded to Mrs. Rawls as part of the alleged settlement stood in the name of his wife as her separate property, and hence that Wisdom could not convey it without her joinder. But, regardless of that, it is not disputed that Mr. Love, as Mrs. Rawls' attorney, refused to approve the deed.

It is, we think, perfectly apparent that the evidence strongly raised the issue that the alleged compromise agreement was never consummated. Of course if it was not, then Mrs. Rawls was entitled to recover on the original contract of 1935, as found in her favor by the jury.

As we have said above, that issue was not submitted to the jury and it was not requested by either party. Not having been submitted or requested, we think it was such issue as could be found by the trial court. Appellants relied on the alleged agreement as a compromise and settlement of the controversy growing out of the original transaction. They offered the writing signed by the parties and made proof of surrounding circumstances to explain it and render it understandable. Thus they proved its terms. But they did not establish as a matter of law that it ever became a contract. Whether or not it was finally consummated was a controverted fact. And since the trial court entered a judgment in favor of Mrs. Rawls for the title and possession of the property, it will be presumed that he found the issue in her favor. Wichita Falls Ry. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79; Lindley v. Franklin Fire Ins. Co., Tex.Com.App., 152 S.W.2d 1109; Willard v. Whitaker, Tex.Civ.App., 153 S.W.2d 878.

The judgment of the trial court is affirmed.

### On Rehearing.

On their motion for rehearing, appellants strongly urge that we were in error in

holding that the issue of whether or not the alleged compromise agreement was ever consummated was such issue as the trial court could find and presumably did find in support of the judgment in favor of Mrs. Rawls. In that connection they contend that such issue was an independent ground of defense relied upon by Mrs. Rawls, and since she did not request and obtain a finding on it, she waived it.

■■ We do not differ in any respect with appellants' construction of the rule announced by our Supreme Court in Wichita Falls & O. Railway Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79, to the effect that the power of the trial court to make findings, in cases tried to a jury does not extend to an ultimate or independent ground of recovery or defense, and that such an issue when not requested and not submitted is waived. But it is our view that such rule, on the record before us, does not entitle the appellants to a reversal of this case. This for two reasons. First, the issue of whether or not the alleged compromise agreement of 1938 was ever consummated was not the ultimate issue but was only part of appellants' defensive issue that the contract of 1935, upon which Mrs. Rawls sued, had been superseded by a compromise agreement. Rodriguez v. Higginbotham-Bailey-Logan Co., Tex.Sup., 160 S.W.2d 234. See opinion Court of Civil Appeals, 144 S.W.2d 993. Second, the issue was purely a defensive issue relied upon by appellants and if it was such issue as the court could not find, then appellants, and not Mrs. Rawls, waived it by failing to request that it be submitted.

■ As pointed out in the original opinion, Mrs. Rawls based her cause of action on the original contract made in 1935. She offered evidence in support of it and obtained jury findings in her favor thereon. It was the defendants (appellants) and not

Mrs. Rawls, who relied upon the alleged compromise agreement of 1938. They urged it as a ground of their defense against Mrs. Rawls and undertook to establish that it superseded the contract of 1935 upon which she grounded her suit. To do that it was necessary for them to show, not merely the terms of the proposed settlement, but also that it in fact became the contract of the parties. Appellants established the terms of the proposed settlement by the written instrument and proof of the surrounding facts and circumstances, which disclosed without dispute that if made the effect of it was to supercede the prior contract and thus defeat Mrs. Rawls' suit by destroying the contract upon which her suit was grounded. But the other essential fact—the fact of whether or not Mrs. Rawls ever agreed to it, was a strongly controverted fact. Her proof that she signed the instrument conditionally, that the condition was not met, and that she never agreed to it, was merely in rebuttal of appellants' fundamental ground of defense. It formed no part of the cause of action sued upon by her, and her proof in rebuttal of appellants' defense did not have the effect of shifting to her the burden of obtaining a jury finding on the issue. The burden of it rested with the defendants.

We are still of the view expressed in the original opinion, that the question of whether or not the compromise settlement was consummated, was merely part of the broader fundamental defensive issue that the contract of 1935 sued upon by Mrs. Rawls had been settled by the alleged compromise of 1938. So viewed it was such incidental issue as the trial court could find in the absence of a request for its submission. But even if we should be in error in that, then the appellants are in no better shape, for in that event they and not Mrs. Rawls waived it.

The motion for rehearing is overruled.